# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ANQUANTAE MCDUFFIE,

      Petitioner,

v.                             CASE NO:  8:09-CV-1619-T-30AEP

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondent(s).

_____/

# ORDER

Petitioner, an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 (Dkt. #1).  The Court has considered the petition, Respondents' response (Dkt. #12) and Petitioner's reply (Dkt. #17). Upon review, the Court determines that the petition must be denied because Petitioner has failed to demonstrate that if not for his counsel's allegedly inadequate services, the result in the proceedings against him would have been different.

## BACKGROUND

Petitioner, Anquantae McDuffie, (hereafter referred to as "McDuffie" or "Petitioner"), was charged with the second-degree murder of Daniel Gary ("Gary"), attempted first degree murder of Tyreece Rutledge ("Rutledge"), and felony possession of marijuana.  The marijuana charge was severed for trial, and after being convicted of the other two offenses,

Petitioner pled guilty to the marijuana possession charge and was sentenced to a concurrent five-year sentence. He was given consecutive minimum mandatory life terms for the second-degree murder and attempted first-degree murder.

Petitioner shot Gary once in the head, and then chased Rutledge before shooting him in the back, leaving him paralyzed from the waist down. Petitioner claimed self-defense in both shootings because Gary allegedly had a gun, and Petitioner feared that Rutledge was running to his car to get a gun.

The incident occurred after Rutledge and Martagus Newton ("Newton) played a basketball game, upon which Petitioner and Gary bet $20. Petitioner knew Newton from high school. The basketball game was arranged when Newton and Petitioner met with several others at a convenience store. Newton did not know Gary or Rutledge. Petitioner bet on Newton winning the game. Newton lost.

Newton and Rutledge were witnesses for the State, while David McDaniel ("McDaniel") and Corey Stewart ("Stewart"), who also witnessed the shootings, were witnesses for the Defense. Petitioner did not testify. Newton testified that, as the game was ending, he heard a gunshot and ran from the courts, hearing several more shots as he ran, but he was not aware who was shooting.

Dwayne Walton ("Walton"), who resides next to the basketball court, testified that he heard gunfire and then saw a man chasing another man down the alley, with the latter screaming for his attacker not to shoot him. After this man was shot, Walton called the police and then went to check on the man that had been shot. There was no firearm in the

vicinity.

Gary was shot with a .25 caliber pistol, and a .25 caliber Beretta pistol's bullet and shell casing were found in a field near the basketball court. Upon Petitioner's arrest the next day, a box of .25 caliber ammunition was discovered in a backpack in Petitioner's room. And a .380 caliber, fully loaded pistol was discovered under Petitioner's bed. Petitioner had alerted the police to the pistol. Petitioner and the Defense witnesses said that 0.380 caliber pistol belonged to Gary, and that they had taken it from him after the shooting.

Petitioner initially denied being involved in the shooting or even being present at the basketball court. He claimed he was with his girlfriend and a friend, David McDaniel, and McDaniel's girlfriend at the time. Before going out with them, Petitioner claimed someone came to his residence to borrow his gun, but he did not identify who it was. When police informed Petitioner that two individuals placed him at the basketball court at the time of the shooting, he altered his story to admit that he was at the court, but that someone else shot Gary with Petitioner's gun. Petitioner said he had recognized the sound of his gun when he heard the shots fired. Petitioner claimed the shooter must have gotten the gun from Petitioner's car.

When police spoke to McDaniel, he did not corroborate Petitioner's alibi, and in fact identified Petitioner as the shooter. Petitioner stuck to his story when he heard McDaniel's statement until he heard a tape-recorded version, and finally declared his intention to tell police the truth about what occurred. First, Petitioner said that someone handed him the .380 pistol after the shots started, and he took it home with him. Later, in his second recorded

statement, Petitioner said he lied initially because he was afraid of getting caught up in an investigation of this nature, given the fact that he had never been in trouble for something like this before. Petitioner told police that before the game started, Gary showed his gun, the .380 pistol, to him, which made Petitioner nervous and he consequently got his gun from his car. After the game, Petitioner said he and Gary started arguing about the game, and the latter pulled out his gun. Petitioner said his own gun was already cocked, and he took it out and shot Gary, who still had the gun in his hand when he hit the ground. Petitioner said that McDaniel got the gun from Gary's hand, and Petitioner chased after Rutledge, who was fleeing, because Petitioner feared Rutledge might be running to get his own gun from his car.

Petitioner claimed that the .380 pistol that McDaniel handed Petitioner was the same one found in his room, but Petitioner could not recall what happened to his .25 pistol. He said that he was defending himself, but admitted to shooting around six times. Gary was turned away from him, but Petitioner thought he was reaching for his gun, so he shot him. Neither Petitioner nor any of the witnesses claimed that Rutledge was armed during the incident.

Rutledge testified that, after he won the game, he picked up the $20 and turned to address Gary when he saw Petitioner shoot Gary in the head. Rutledge said he ran away, with Petitioner chasing him. He begged for the latter not to shoot him, but Petitioner shot anyway. The last bullet lodged into Rutledge's spine, leaving him paralyzed from the waist down.

For the defense, McDaniel testified that before the game, Gary lifted his shirt to show that he was carrying a gun, which he said was for protection. McDaniel said that he did not see any confrontation between Petitioner and Gary, and when he heard a shot, Gary was on the ground, having been shot by Petitioner. Mc Daniel also testified that the .380 pistol later found in Petitioner's room was the one Gary had shown them before the game. McDaniel admitted that he did not know why Petitioner shot Gary, since he saw no argument between the two.

Stewart testified that he, Petitioner, and McDaniel are cousins. He testified that after Rutledge picked up the money after the game, Gary confronted someone about the money, leading up to the shooting. Stewart testified that he saw the .380 in Gary's hand, and that McDaniel picked it up after Petitioner shot Gary. Stewart also had denied knowing anything about the shooting when police first questioned him.

Petitioner was found guilty of second-degree and attempted first-degree murder in October of 2005, for which he was sentenced to consecutive life terms in prison. He was also sentenced to a five-year concurrent term for marijuana possession. Petitioner appealed his conviction, and after briefing, the state district court affirmed his conviction without elaboration on October 20, 2006. *McDuffie v. State*, 944 So.2d 363 (Fla. Dist. Ct. App. 2006). Petitioner then filed a *pro se* Motion for Rehearing which was invalidated as being unauthorized. Petitioner did not seek certiorari review in the U.S. Supreme Court.

In September of 2007, Petitioner filed a pro se Motion for Postconviction Relief under Florida Rule of Criminal Procedure 3.850. Many claims were denied by nonfinal order on

December 20, 2007, and the remaining claims were denied by the postconviction court on February 25, 2008. Petitioner appealed again, and in March of 2009, the state district court upheld the rule 3.850 denial without written decision. *McDuffie v. State*, 8 So.3d 1141 (Fla. Dist. Ct. App. 2009).

Petitioner filed a <u>pro</u> <u>se</u> petition for writ of habeas corpus dated May 19, 2009, which the postconviction court dismissed. It held that it was foreclosed from treating the petition as a rule 3.850 motion because Petitioner's motion was untimely and successive. Petitioner subsequently filed a 28 U.S.C. §2254 <u>pro</u> <u>se</u> petition for writ of habeas corpus in this court on August 3, 2009. In grounds one through four of the petition, Petitioner lists instances of ineffective assistance of his trial counsel, and those grounds were exhausted in his rule 3.850 motion.

In ground one, Petitioner says his counsel was wrong not to call Officer Santiago as a witness to testify that Rutledge told him Gary carried a gun, and that he possibly was carrying one at the time of the shooting.

In ground two, Petitioner argues that his trial counsel provided ineffective service by not presenting the appropriate defense to count two, attempted first degree murder of Rutledge. Petitioner's counsel used "self-defense" as the defense to both the second-degree murder and attempted first-degree murder charges, but Petitioner argues that he should have been prepared with other options, specifically a "necessity" or "duress" defense.

In ground three of the petition, petitioner alleges that his counsel should have consulted with a weapons expert to ascertain the distance and trajectory of the shot fired into

Rutledge's back, as well as the caliber of the round lodged in his spine.

In the fourth ground, Petitioner argues that trial counsel did not examine or explore his case properly. Specifically, counsel failed to call on Dr. David McCraney, a neurologist, to show that Rutledge's injury was caused by his flight rather than Petitioner's bullet.

## STANDARD OF REVIEW

The petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), which essentially prevents federal habeas retrials and ensures that state-court convictions are given due deference. *Bell v. Cone*, 125 S.Ct. 847, 160 L. Ed. 2d 881 (2005).

Title 28 U.S.C. §2254, in pertinent part, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Factual findings by state courts are presumed to be correct, and Petitioner must undermine the presumption of correctness by clear and convincing evidence. 28 U.S.C. §2254(e)(1); *Henderson v. Haley*, 353 F.3d 880, 890-891 (11th Cir. 2003). Additionally, a §2254 petition cannot be granted unless Petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. §2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998).

When a Petitioner challenges a state court's judgment on Petitioner's claim of ineffective assistance of counsel, Petitioner has the burden of showing (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984).

## DISCUSSION

### Ground One

Petitioner's first ground for ineffective assistance of counsel is that his attorney was inadequate for not calling Officer Santiago to the stand. But even assuming counsel's representation was deficient in this regard, the claim still fails because Petitioner has not shown prejudice. Given the totality of the evidence, Petitioner fails to show that Officer Santiago's testimony would have changed the outcome of the trial.

Petitioner claims that Officer Santiago would have stated that Rutledge knew about the .380 caliber gun and that Gary may have been carrying it that day. He contends that Officer Santiago was the only witness who could attest to Rutledge's knowledge of the gun.

In regards to the first prong of the *Strickland* test, the postconviction relief court found that Officer Santiago's testimony was inadmissible hearsay and therefore would not have changed the outcome of the case even if Officer Santiago had been called to the stand by Petitioner's attorney. Hearsay is an out of court statement presented to prove the truth of the matter asserted. The postconviction court was right that Officer Santiago's statement was

hearsay, but it was possible to get the information into evidence by first questioning Rutledge and then impeaching him through proper questioning of Officer Santiago. It is difficult to say whether every lawyer performing to an objectively reasonable standard would have known to do that, but this court does not need to address deficiency of performance, because Petitioner fails the second prong of the *Strickland* test.

To satisfy the *Strickland* standard for prejudice, Petitioner must demonstrate that had his counsel performed differently, it would have changed the outcome of the trial. McDuffie shot Gary in the head, an unusually accurate shot for one made in the extremity of self-defense, and immediately ran after Rutledge to shoot him too. Rutledge, in fact, was running in the opposite direction from his car and was begging for his life. And McDaniel, McDuffie's cousin, said he saw no argument between McDuffie and Gary before the shooting. Even if Officer Santiago had testified that Rutledge acknowledged that Gary possibly had a gun, it is highly unlikely that it would have changed the jury's opinion that the shootings were not in self-defense. Therefore, McDuffie has not met his burden to show that he was prejudiced by the lack of Officer Santiago's testimony about the statement from Rutledge.

## Ground Two

The second ground for Petitioner's claim is that his counsel was ineffective because he did not present an appropriate defense to the attempted first-degree murder charge, which warranted a necessity or duress defense rather than a self-defense argument. This ground fails both legally and factually.

Legally, there is not a "necessity" defense separate and apart from self-defense. The self-defense argument subsumes the necessity claim that Petitioner puts forth. Under Florida law, a person is justified in using deadly force, and does not have a duty to retreat, if he reasonably believes that such force is necessary to prevent imminent death or great bodily injury to himself or another, he is not involved in an illegal activity, and he has a legal right to be there. FLA. STAT. § 776.012 (2009); *Williams v. State*, 982 So.2d 1190 (Fla.App. 4 Dist., 2008). Therefore, "necessity" is a part of self-defense and not an independent defense available to Petitioner.

Under Florida law duress is not available as a defense to homicide because "duress will never justify the killing of an innocent third party." *Salas v. State*, 972 So.2d 941, 955 (Fla. App. 5 2007). Even where the defense is available, the party must show that he had no other way to avoid danger than to commit the crime. *Salas*, 972 So.2d at 955. The postconviction relief court in the instant case rightfully stated that Petitioner had the option of running away if he felt that Rutledge was running to get his gun, rather than chase after him and shoot him.

Since neither a "necessity" nor "duress" defense was legally available, it was not deficient performance on Petitioner's counsel part to fail to raise them.

The second ground of the petition fails factually, as well. Rutledge was running away when Petitioner shot him. Since Rutledge did not pose a threat of imminent death or great bodily injury, there was no necessity to shoot him.

**Ground Three**

The third ground of the petition is that Petitioner's counsel was ineffective because he did not consult a weapons expert to ascertain the distance and trajectory of the shot fired at Rutledge, nor did he determine the caliber of the round lodged in Rutledge's back. This claim fails both *Strickland* prongs. The nature of Petitioner's claims are speculative and vague, as the postconviction court held, and facts must be specific in establishing both the prongs. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Since Petitioner admitted shooting Rutledge, establishing what caliber the bullet was that lodged into Rutledge's back would be immaterial to the result of the case. The third ground of the petition fails both *Strickland* prongs.

**Ground Four**

The fourth and last ground of the petition is that Petitioner's trial counsel did not adequately research and familiarize himself with the case, specifically because he did not call Dr. David McCraney to testify, which his previous court-appointed counsel had done. This argument fails *Strickland*'s prejudice prong, because Dr. McCraney's testimony would only go to the issue of whether Rutledge's injury was sustained because of his flight, not the gunshot. It is the act of shooting that is pertinent to attempted first-degree murder, not the injury caused. And petitioner does not deny that he shot Rutledge. Therefore, including Dr. MCraney's testimony would not have changed the outcome of the proceeding. Ground four fails both *Strickland* prongs.

It is therefore ORDERED AND ADJUDGED that:

1.     The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2.     The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on June 24, 2010.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies Furnished To**:
Counsel/Parties of Record

*F:\Docs\2009\09-cv-1619.deny 2254.wpd*